UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



---

SHARON L KLEIN, Individually and as
Executrix of the Estate of Daniel O. Klein,
Deceased,

              Plaintiff,

v.

DEPARTMENT OF VETERANS
AFFAIRS, M.D. CHRISTINE CHANG
LIM, VALOR HEALTHCARE, INC.,
VALOR HEALTHCARE, INC., M.D.
NABIL JAMAL, P.A. STEPHEN E.
SNYDER, TRI-COUNTY FAMILY
MEDICINE ASSOCIATES, INC., and
M.D. JAMES E WILD,

              Defendants.

**DECISION AND ORDER**

1:18-CV-00360 EAW

---

## INTRODUCTION

Plaintiff Sharon L. Klein ("Plaintiff") filed the instant lawsuit both as an individual and as executrix of the estate of Daniel O. Klein ("Decedent"), asserting claims of medical negligence, malpractice, and wrongful death. (Dkt. 1). Presently before the Court is Plaintiff's request for an extension of time for service (Dkt. 37 at 4), the motion of defendants Department of Veterans Affairs ("VA") and Christine Chang Lim, M.D. ("Dr. Lim") (collectively "Defendants") to dismiss the claims against them for improper and untimely service pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(5), and Defendants' motion to substitute the United States in their place (Dkt. 29). For the reasons

- 1 -

that follow, the Court grants Plaintiff's request, denies Defendants' motion to dismiss, and grants Defendants' motion to substitute.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff's Amended Complaint (Dkt. 3), the operative pleading in this matter. As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

Decedent was a veteran who served in the Vietnam War. (*Id.* at ¶ 34). Before September 22, 2015, Decedent received primary and psychological care at the Buffalo VA hospital ("Buffalo VAMC"), where he was treated by Dr. Lim. (*Id.*). Plaintiff was also treated at the Dunkirk Clinic, which is operated by the VA and Valor Heathcare, Inc. ("Valor"), as well as at the Gowanda practice operated by Tri-County Family Medicine Associates, Inc. ("Tri-County"). (*Id.*). Decedent was treated for various diseases, including chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, hypertension, high cholesterol, post-traumatic stress disorder ("PTSD"), and depression. (*Id.* at ¶ 35).

On or about November 14, 2006, Decedent was prescribed Cymbalta at Tri-County. (*Id.* at ¶ 36). Between May 19 at October 9, 2010, Dr. Lim and other physicians prescribed Abilify to Decedent. (*Id.* at ¶ 37). Decedent took Cymbalta and Abilify together for approximately five years prior to September 22, 2015, and had regularly scheduled appointments with his doctors, including Dr. Lim. (*Id.* at ¶ 38). During these appointments, he advised his doctors repeatedly that he had developed other symptoms

such as tremors, changes in mental status, and myoclonic jerking of his extremities. (*Id.*). He was evaluated for Parkinson's disease, which was ultimately ruled out as a potential diagnosis. (*Id.* at ¶ 39). No other diagnosis was rendered. (*Id.* at ¶ 40).

On or about September 22, 2015, Decedent's mental state significantly deteriorated. (*Id.* at ¶ 41). He was initially taken to Brooks Memorial Hospital in Dunkirk, New York, and was transferred to Buffalo General Hospital on September 24, 2015. (*Id.*). A neurologist there identified his symptoms as potentially being a side effect of Abilify and ordered that the medication be immediately discontinued. (*Id.* at ¶ 42). Decedent was admitted to Buffalo General Hospital from September 24 through November 3, 2015, developing numerous complications linked to his altered mental state and increasing lethargy. (*Id.* at ¶ 43). After the Abilify was discontinued, Decedent's mental status and tremors slowly improved. (*Id.*). The medical team at Buffalo General Hospital concluded that Decedent's symptoms were related to his medications, especially Abilify. (*Id.*).

Decedent never fully recovered and was re-hospitalized numerous times before passing away on May 29, 2017. (*Id.* at ¶ 45).

## II. <u>Procedural Background</u>

Plaintiff, Decedent's wife, filed the instant lawsuit on March 20, 2018, both as an individual and as the executrix of Decedent's estate. (Dkt. 1). Among other defendants, Plaintiff brings claims against the VA and Dr. Lim. (*Id.*). On March 29, 2018, Plaintiff filed the Amended Complaint. (Dkt. 3). Plaintiff served the VA on April 25, 2018 (Dkt. 11), and Dr. Lim on July 20, 2018 (Dkt. 35). On July 24, 2018, Plaintiff also served the

Attorney General of the United States in Washington, D.C. (Dkt. 33), and the United States Attorney's Office in Montgomery, Alabama (Dkt. 34).

On August 8, 2018, Defendants filed the instant motion to dismiss. (Dkt. 29). That same day, Plaintiff effectuated service on the United States Attorney's Office in Buffalo, New York ("Buffalo USAO"). (Dkt. 38). Plaintiff filed her response to the motion to dismiss on August 24, 2018 (Dkt. 37), and Defendants filed their reply on August 27, 2018 (Dkt. 39).

## DISCUSSION

### I. Motion to Dismiss

#### A. Legal Standard

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." *Jackson v. City of New York*, No. 14-CV-5755 (GBD)(KNF), 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004)). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'" *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002), *aff'd*, 87 F. App'x 221 (2d Cir. 2004)).

## B. Motion to Dismiss and Request for Extension of Time

Defendants move to dismiss the action, arguing that Plaintiff did not properly serve the Buffalo USAO. (Dkt. 31 at 4-5). Plaintiff requests an extension of time for service of the Summons and Complaint. (Dkt. 37 at 4). For the reasons that follow, the Court denies Defendants' motion and grants Plaintiff's request.

A plaintiff has 90 days from the date the complaint is filed to serve the defendant with the summons and complaint. Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond her control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (quotation and alteration omitted).

Additionally, "district courts have discretion to grant extensions [under Rule 4(m)] even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007). When determining whether to give a discretionary extension, Second Circuit courts generally consider four factors: "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (collecting cases); *see Zapata*, 502 F.3d at 198-99.

Plaintiff does not dispute that she failed to comply with the 90-day service deadline as it pertains to Defendants. In lawsuits where the United States and its agencies or employees are defendants, the Federal Rules of Civil Procedure require a party to serve "a copy of the summons and of the complaint to the United States attorney for the district where the action is brought," by personal delivery or certified mail. Fed. R. Civ. P. 4(i)(1). Plaintiff commenced this lawsuit in March of 2018 (Dkt. 1), but did not serve the summons and complaint on the Buffalo USAO until August 8, 2018, well after the 90-day deadline prescribed by Rule 4(m) (Dkt. 38). Her attorneys aver that they were unaware service on the Buffalo USAO had not been effectuated until they received Defendants' motion to dismiss, and that they immediately served the summons and complaint upon the motion's receipt. (Dkt. 37 at 3).

The Court does not reach the issue of whether Plaintiff demonstrates good cause for the failure to effectuate service because it finds that even in the absence of good cause, it will use its discretion to extend the time allowed to Plaintiff because the relevant factors listed in *DeLuca* weigh in favor of granting an extension in the instant matter. While the parties concede that the statute of limitations has not yet run, *see* 28 U.S.C. § 2401(b) (stating the FTCA has a two-year statute of limitations), Plaintiff had until only February 1, 2019, to seek judicial review of the VA's administrative determination that denied Plaintiff's claim regarding Decedent (Dkt. 37-5). Dismissal of Plaintiff's claims at this point could result in the barring of remedies. (*See id.* ("You must exercise [the judicial] remedy within six months of denial . . . or those remedies are barred.")); *see also Hertzner v. U.S. Postal Serv.*, No. 05-cv-2371 (DRH)(ARL), 2007 WL 869585, at *7 (E.D.N.Y.

Mar. 20, 2007) (finding that the statute of limitation factor weighed in favor of the plaintiff because the lawsuit was filed on the 90th day after she received her "Right to Sue" letter from a government agency and would have been time-barred upon refiling). Additionally, Defendants do not dispute that they had notice of the suit (Dkt. 39 at 4), and the record before the Court does not show that they would be unduly prejudiced by an extension. *See B.J.S. v. State Educ. Dep't/Univ. of State of N.Y.*, No. 07-CV-456A(F), 2011 WL 3651051, at *11-12 (W.D.N.Y. Aug. 18, 2011) (granting the plaintiff an extension of time to re-serve the defendant because "the impact on Plaintiff of dismissal would outweigh any prejudice to the [defendant] in defending this action"), *report and recommendation adopted*, 2011 WL 4549192 (W.D.N.Y. Sept. 29, 2011).

Defendants instead argue Plaintiff has offered no justifiable excuse for the delay, and Plaintiff's neglect in this case should be dispositive. (Dkt. 39 at 4). They rely on the Second Circuit's decision in *Zapata*, 502 F.3d 192; however, that opinion is distinguishable from the instant matter in several ways. The plaintiff in *Zapata* "made no effort to effect service within the service period." *Id.* at 199. In contrast, Plaintiff made efforts to serve Defendants prior to the expiration of the 90-day service period—the VA was served on April 25, 2018 (Dkt. 11), and Plaintiff also made efforts during the 90-day period to serve Dr. Lim (Dkt. 37-1 at 1), who was apparently dodging service, before finally succeeding on July 20, 2018 (Dkt. 37 at 2-3). Additionally, the plaintiff in *Zapata* waited until two months after receiving the defendant's motion to dismiss for improper service to seek an extension from the court to properly serve the defendant. *Zapata*, 502 F.3d at 199. In the instant matter, Plaintiff immediately served the Buffalo USAO upon receipt of the motion

and asked for an extension of time approximately two weeks later. (Dkt. 37 at 3-4). While Plaintiff's efforts to serve Defendants may not have been in compliance with Rule 4(i), the Court finds that Plaintiff's actions both before and after discovering the deficiency in service demonstrate a good-faith effort to serve the federal defendants.

Also, unlike *Zapata*, Plaintiff has articulated a cognizable excuse for the delay. In *Zapata*, the plaintiff claimed the reason for the delay in service was that the plaintiff did not possess necessary identifying information for the defendant—an assertion that the record flatly contradicted. *Zapata*, 502 F.3d at 199. In the instant matter, Plaintiff asserts that after the case was filed, three of the six attorneys working at the law firm representing Plaintiff left for personal or medical reasons, demonstrably increasing the workload of those who remained. (*Id.* at 3). Although this excuse may not rise to the level of good cause, it is not the blatant disregard of information demonstrated by the plaintiff in *Zapata*. Moreover, *Zapata* recognizes that a district court need not require that the plaintiff raise a "colorable excuse" in order to exercise its discretion to grant an extension of time for service. *Zapata*, 502 F.3d at 198 n.7 ("While . . . this Court will not disturb a district court's dismissal absent some colorable excuse raised by the plaintiff, nothing in our opinion should be read as a per se rule that *district courts* must require such an excuse in all cases.").

Accordingly, the Court denies Defendants' motion to dismiss, grants Plaintiff an extension of time for service until the date that service was complete on the Buffalo USAO, and declares Plaintiff's late service on the Buffalo USAO effective *nunc pro tunc*.

## II. Motion to Substitute

The Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States' sovereign immunity for "claims against the *United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1) (emphasis added). Under the FTCA, when a federal employee is sued for negligence, a United States Attorney determines whether the employee was acting within the scope of his or her employment, and if so, "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1)-(2); *see* 28 C.F.R. § 15.4 ("The United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose.").

Plaintiff alleges a claim for medical malpractice against Dr. Lim, a medical doctor employed by the Buffalo VAMC at the relevant time. (Dkt. 3 at ¶¶ 7-9). On August 1, 2018, United States Attorney James P. Kennedy, Jr. certified that Dr. Lim was acting within the scope of his employment with respect to the claims alleged by Plaintiff (Dkt. 32), and Plaintiff does not dispute that Dr. Lim was acting within the scope of her employment.

Additionally, the FTCA does not authorize lawsuits against federal agencies, 28 U.S.C. § 2679(a), so the action must be brought against the United States, not the VA, *see, e.g., Holliday v. Augustine*, No. 3:14-cv-855 (SRU), 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015) (granting the motion to substitute the United States as the defendant for the

Department of Veterans Affairs in an FTCA action); *Brockway v. VA Conn. Healthcare Sys.*, No. 3:10-CV-719(CSH), 2012 WL 2154263, at *7 (D. Conn. June 13, 2012) ("If . . . the United States is indeed the correct defendant with respect to plaintiff's FTCA claim, the Government may move the Court to substitute the United States for defendant VA Connecticut Healthcare System.").

Accordingly, Defendants' motion to substitute the United States for the VA and Dr. Lim is granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request for an extension of time for service is granted (Dkt. 37 at 4), and the Court declares Plaintiff's late service of the Buffalo USAO effective *nunc pro tunc*. Defendants' motion to dismiss is denied, and Defendants' motion to substitute is granted. (Dkt. 29). The Clerk of Court is instructed to substitute the United States as a party for the VA and Dr. Lim.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 20, 2019
      Rochester, New York